# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SUSAN PAGE,                                         :

                                 Case No. 3:12-cv-103

          Plaintiff,

                                 District Judge Walter Herbert Rice
                                 Magistrate Judge Michael R. Merz

    -vs-

UNIMERICA INSURANCE
COMPANY, *et al.*,

          Defendants.         :

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Defendant Johnson Electric North America, Inc.'s, Motion to Enforce Settlement and Dismiss with Prejudice. (Doc. No. 28.) The parties have fully briefed the issues, *Id.*; Doc. Nos. 34, 38.

Although a motion to enforce a settlement is obviously made pre-trial and is not among the "dispositive" motions listed in 28 U.S.C. § 636(b)(1)(A), if granted it would have the effect of disposing of the claims of the party against whom the settlement is enforced. The Sixth Circuit has recognized that motions not listed in the statute may be functionally dispositive and therefore not within the decisional power of Magistrate Judges, but instead requiring a report and recommendations. See, e.g., *Vitols v. Citizens Banking Co.*, 984 F.2d 168 (6th Cir. 1993); *Bennett v. General Caster Service of N. Gordon Co., Inc.*, 976 F.2d 995 (6th Cir. 1992)(*per curiam*); *Woods v. Dahlberg,* 894 F.2d 187 (6th Cir. 1990)(*per curiam*); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1463 (10th Cir. 1988); *Vogel v. U.S. Office Products Co.*, 258

F.3d 509 (6th Cir. 2001). Therefore, the Magistrate Judges files this Report and recommendations on the instant Motion.

Plaintiff Susan Page filed this action against Johnson Electric and Unimerica Insurance Company seeking benefits under a Group Life Accidental Death and Dismemberment and Long Term Disability Certificate of Coverage Policy (the "Plan") issued by Unimerica to Johnson Electric (Complaint, Doc. No. 2).

The Complaint avers that Ms. Page's husband, Roy Page, was employed by Johnson Electric beginning October 1, 1996. *Id.*, PageID 3-4. Over a period of time, Mr. Page suffered two strokes, had diabetes-related gangrene of his right foot, peripheral artery disease, and foot ulcers. *Id.* at PageID 4. Effective March 13, 2010, Unimerica determined that Mr. Page was totally disabled and entitled to short-term disability benefits under the Plan. *Id.* Prior to becoming disabled, Mr. Page was enrolled in the Plan's life insurance program and Johnson Electric paid the premiums. *Id.* The Plan provided for life insurance benefits in an amount equal to 1.5 times Mr. Page's salary of $130,690.52. *Id.* The Plan also provided that once a plan participant ceased to be eligible for employer-paid life insurance coverage, he could convert his life insurance to an individual policy which Unimerica offered. *Id.* Mr. Page did not do so and died on April 7, 2011. *Id.* at PageID 5. Subsequently, Unimerica denied Ms. Page's claim for Mr. Page's life insurance proceeds on the basis that Mr. Page did not convert his employer-paid life insurance coverage to an individual policy within ninety days of the date he became disabled. *Id.* Unimerica denied Ms. Page's appeal, *Id.*, and this action followed. Judge Rice entered a scheduling order in August 2012, but about four months later Johnson Electric filed the instant Motion to Enforce a purported settlement.

Essentially, Ms. Page's litigation position is that in spite of numerous telephone conversations and written contact with representatives of Johnson Electric and Unimerica during the period May 20 through October 5, 2010, neither Johnson Electric or Unimerica advised her or Mr. Page of the conversion requirement *Id.* at PageID 5-7. Additionally, Ms. Page avers that the Plan contains no "practical information" that would advise a plan participant or beneficiary how to elect conversion coverage under the Plan or obtain a form for that purpose. *Id.* at PageID 7. Ms. Page brought claims for breach of fiduciary duty under ERISA, equitable estoppel, and promissory estoppel against both Johnson Electric and Unimerica. At the time Page filed her Complaint, she was represented by attorney Philip Brown. PageID 8-13.

Johnson Electric seeks to enforce a confidential settlement which it alleges it and Ms. Page entered into on October 26, 2012. (Motion to Enforce, Doc. No. 28, PageID 268.) In support of its Motion, Johnson Electric has provided several documents, filed under seal, which provide a roadmap of events which led to the settlement and which occurred after the parties allegedly agreed to settle the matter. *Id.* at Attachments 1 through 17, (Exs. A through N), PageID 275-328. Those documents establish, *inter alia,* that Mr. Brown represented Ms. Page during the settlement negotiations. *Id.*

On January 10, 2013, after Johnson Electric filed the present Motion, attorney Dwight D. Brannon entered his appearance "as counsel for Plaintiff, Susan Page, for purposes of any issues of the purported settlement." (Doc. No. 27, PageID 207.)  On January 22, 2013, Ms. Page's counsel Mr. Brown filed under seal his January 17, 2013, Affidavit which avers that he cannot represent to the Court that he has an understanding of events that is inconsistent with the representations made in the documents Johnson Electric provided in support of its Motion. (Doc.

3

No. 30, Attachment 1 PageID 334-35.) Thereafter Mr. Brown withdrew and Mr. Brannon became Ms. Page's trial attorney (Doc. No. 39).

On February 5, 2013, Ms. Page, through Mr. Brannon, filed her opposition to Johnson Electric's Motion. (Doc. No. 34.) A large part of Ms. Page's opposition is devoted to a recitation of her version of the facts which form the basis of her Complaint and her arguments as to the merits of her claims. *Id.,* at PageID 345-51. Neither, of course, is relevant to the present Motion. With respect to the Motion before the Court, Ms. Page's position is that she never gave Mr. Brown authority to settle this matter on her behalf. *Id.* at PageID 351-57. In support, Ms. Page has submitted her February 5, 2013, eighty-four paragraph Affidavit, as well as several pieces of correspondence between herself and Mr. Brown, including, *inter alia,* correspondence related to settlement. *Id.* at PageID 359-368, 479; 480; 488-89; 490; 497-500; 501. In addition to opposing Johnson Electric's Motion, Ms. Page seeks "payment of attorney fees … and the non-enforceability of any settlement, as there was none" and "the further rebel [sic] to which she is entitled at law." *Id.* at PageID 357.

In Reply, Johnson Electric argues that Ms. Page has presented no material opposition to its Motion, that her position that she did not give Mr. Brown authority to settle the matter is contradicted by the documents it provided, and that she entered into a valid settlement agreement with Johnson Electric. (Reply, Doc. No. 38.)

In March, 2013, the Magistrate Judge entered an Order for Evidentiary Hearing which set forth the following law on settlement agreements:

> "An oral agreement to settle a claim is enforceable under federal law." *Wyche v. Procter & Gamble,* 772 F. Supp. 982, 984 (S.D. Ohio 1990)(citations omitted). Under Ohio law, "a valid settlement agreement is a contract between parties requiring a meeting of the minds as well as an offer and acceptance." *Smith v. ABN Amro Mortg. Group Inc.,* 434 Fed. Appx. 454, 460 (6th Cir. 2011), *citing*

4

> *Rulli v. Fan Co.,* 79 Ohio St.3d 374 (1997)(syllabus). Although "[i]t is preferable that a settlement be memorialized in writing, … an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Smith, supra,* citing *Kostelnik v. Helper*, 96 Ohio St.3d 1 (2002). "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Smith, supra, citing Ruli,* [79 Ohio St.3d at 376]. It is well established that a district court has the inherent power to enforce agreements entered into in settlement of litigation pending before it. *Wyche,* 772 F. Supp at 983, *citing Bostick Foundry Co. v. Lindberg, a Div. of Sola Basic Industries, Inc.,* 797 F.2d 280, 282-83 (1987). "A plaintiff who knowingly and voluntarily agrees to settle his claims is bound by his agreement." *Wyche,* 772 F.Supp. at 983, *citing Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52 n. 15 (1974).
>
> Under Ohio, law, absent express authorization by his client, an attorney does not have authority—apparent or otherwise—to settle his client's claim:
>
>> [T]he rule regarding an attorney's authority is clear. Unless the attorney has been expressly authorized to do so, he has no implied or apparent authority, solely because he was retained to represent the client, to negotiate or settle the client's claims.
>
> *Hinton v. Trinity Highway Products, LLC,* No. 4:12-cv-1063, 2012 WL 5054140 *3 (N.D. Ohio Oct. 18, 2012), *quoting Ottawa County Commissioners v. Mitchell,* 17 Ohio App.2d 208, 212 (Ohio App. 6th Dist. 1984); *Morr v. Crouch,* 19 Ohio St.2d 24 (1969)("[T]he rule in Ohio … is that an attorney who is without specific authorization has no implied power by virtue of his retainer to compromise and settle his client's claim or cause of action.").
>
> Under the relevant law, in order to succeed in enforcing the settlement agreement, Johnson Electric must demonstrate not that it had good reason to believe that Mr. Brown had authority to settle Ms. Page's claims, but rather that Ms. Page had expressly authorized Mr. Brown to settle her claim. *See*, *Hinton,* 2012 WL 5054140 at *3.

(Order, Doc. No. 40, PageID 544-45).

5

Having set forth this much law, the Magistrate Judge determined that the Motion could not be decided on the filings alone and set the case for evidentiary hearing, noting that the key question was whether Ms. Page gave Mr. Brown express authorization to settle this case (Order for Evidentiary Hearing, Doc. No. 40).  That hearing was held June 27, 2013, and the testimony transcribed and filed under seal (Hearing Transcript, Doc. No. 49)(hereinafter "Hrg.Tr."). Subsequent to the hearing, both parties filed proposed reports and recommendations, also under seal (Doc. Nos. 52, 53.)

**The Evidence Presented**

Ms. Page's former counsel, Attorney Philip Brown, testified he was retained in July 2011 (Hrg.Tr. PageID 576.)  His Fee Agreement is admitted in evidence as Exhibit 2 and his invoice for legal services from November 30, 2011, through October 23, 2012, is admitted as Exhibit 3. He testified that he began settlement discussions with defense counsel in May 2012 (Hrg.Tr. PageID 576.)

Ms. Page's initial settlement demand was $196,000, which was one and one-half times Mr. Page's salary, the face amount of the life insurance policy.  *Id.* at PageID 579.  If it had been accepted, this would have foregone recovery of interest and attorney fees.  *Id.*  Mr. Brown recalled that Johnson Electric's initial offer was $10,000 and that Ms. Page authorized reduction of her demand to $180,000.  *Id.* at PageID 580.  On July 18, 2012, Ms. Page authorized reduction of her demand to $170,000.  *Id.* at PageID 581 and page 7 of Exhibit 2.  As part of his discussion with Ms. Page, Mr. Brown that additional terms of the settlement would be releasing all claims

relating to life insurance, Unimerica would also be released, and the settlement would be confidential. *Id.* at PageID 582.

On September 5, 2012, Johnson Electric offered $40,000. *Id.* at PageID 584. In response, Ms. Page lowered her demand to $110,000 if Mr. Brown's fees were paid, a demand he conveyed on September 20, 2012. *Id.* at PageID 585.

On October 16, 2012, Mr. Brown had a conversation[1] with Ms. Page in which he recalls she said "I have decided to set aside my emotions and think practically and I will authorize you to accept the $95,000 plus the $10,000 which I had agreed I was reducing my fee by half or more than half." *Id.* at PageID 587. Based on that, he made a final demand of $107, 500 on October 19, 2012. *Id.* at PageID 588. Counsel for Johnson Electric responded with an offer of $105,000, which is the amount Ms. Page had authorized. *Id.*

The next time Mr. Brown heard from Ms. Page, she said she would not accept anything less than her initial demand of $196,000 because the $ 95,000 (her portion of the $105,000) would not cover her credit card debt. *Id.* at PageID 589. Mr. Brown testified that this was the first he heard about the need to cover credit card debt as part of the settlement. *Id.* Mr. Brown memorialized this conversation in a letter to Ms. Page on October 23, 2012. Johnson Electric Exhibit 5. In relevant part, the letter reads:

> This past Friday afternoon, Johnson Electric's attorney called me and advised that Johnson Electric was making a final offer of $105,000.00 in return for a release of all claims against it and securing a release of claims from Unimerica against Johnson Electric for any claims related to Roy's life insurance benefits. This amount met your stated goal for settlement, in accordance with the authority you gave me on October 16. The offered amount would settle the case because I would further reduce my

---

[1] Because Mr. Brown's authority to settle, the determinative issue, would depend on communications from Ms. Page, the Magistrate Judge had previously determined that the attorney-client communication privilege was waived as to relevant communcations on authority. See. Doc. No. 40, PageID 546, discussed at Hrg.Tr. PageID 586-87.

>fee in order to accommodate a settlement I believe is in your best interests.

*Id.* In response, Ms. Brown wrote Mr. Brown on October 26, 2012:

>Although it is not the amount I had hoped for, for practical purposes and after talking to another attorney/s, I agree to accept $95,000 as settlement for my husband's life insurance claim of $196,000.
>
>This consent is dependent upon my reading of the actual settlement agreement, which I have not seen as of this date.

Johnson Electric Exhibit 6. Sometime on the same day, Mr. Brown communicated acceptance to Johnson Electric's counsel (Hrg.Tr PageID 594).

On November 5, 2012, Kathleen Anderson, Johnson Electric's counsel, sent documents embodying the settlement agreement to Mr. Brown. Johnson Electric exhibit 1-B. Mr. Brown responded the next day, making suggested changes request by Ms. Page. (Hrg.Tr. PageID 595 and Johnson Electric Exhibit 1-C.) Ms. Anderson accepted all of the requested changes. . (Hrg.Tr. PageID 595 and Johnson Electric Exhibit 1-D.) After the documents were finalized, Mr. Brown sent them to Ms. Page and never spoke with her again (Hrg.Tr. PageID 596). Mr. Brown testified he was authorized to accept Johnson Electric's final offer. *Id.* at PageID 599.

On cross-examination, Mr. Brown admitted Ms. Page had left a voice mail on his office telephone on the morning of October 19, 2012, but he did not hear that message until October 22, 2012, at about 9:00 A.M. (Hrg. Tr. PageID 604-05.) In that message Ms. Page said she did not want to accept anything less than the original demand of $196,000. *Id.* at PageID 606. At that point in time, Mr. Brown had not communicated an acceptance. *Id.* at PageID 607.

Ms. Page testified that when she retained Mr. Brown as counsel, she "wanted to go to court. I felt very strongly about that, because I felt that there was a wrong done to my husband

8

and myself by Johnson Electric and I wanted to right a wrong, and I just felt very strongly that I wanted to go to court." (Hrg.Tr. PageID 636-37.)  She was therefore not comfortable with the idea of settlement talks and only agreed to allow Mr. Brown to negotiate because she understood "that at any time I could decide I didn't like what was offered and go to court."  *Id.* at PageID 637.  She claimed she never gave Mr. Brown authority to settle for particular amounts of money. *Id.* at PageID 639.  When she authorized a demand of $196,000, it was with the understanding that it would be tax-free with attorney fees paid on top of that and she would not give up her rights to pursue United Healthcare or Johnson Electric for "COBRA problems."  *Id.* at PageID 640.  She also wanted something for pain and suffering.  *Id.* at PageID 642.  Ms. Page testified at length about her conversations with Mr. Brown in which he identified the difficulties with her case.  *Id.* at PageID 646-51.

Ms. Page acknowledged receiving Mr. Brown's letter of October 23, 2012 (Hrg.Tr. at PageID 657; Johnson Electric Exhibit 5).  She admitted that she had had a telephone conversation with Mr. Brown on the morning of October 22, 2012, but disagreed with his representation of its content (Hrg.Tr. at PageID 657, 659).  She did, however, understand that she had until October 26, 2012, to decide whether or not to accept the Johnson Electric offer of $105,000 or find an attorney to replace Mr. Brown.  *Id.* at PageID 663.

## Analysis

Although this is an ERISA case, the question of whether a settlement agreement is enforceable and the ancillary question of whether an attorney has been authorized to enter into a settlement are questions of Ohio law.  The parties implicitly recognize this by citing Ohio law in

their motion papers.  A federal court deciding state law questions must apply state substantive law to those issues, even if the basis of subject matter jurisdiction is the fact that a federal claim is involved.  28 U.S.C. § 1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).  In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.;  In re Akron-Cleveland Auto Rental,  Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987).  The available data to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989); *accord Northland Ins. Co. v. Guardsman Products, Inc*., 141 F.3d 612, 617 (6th Cir.1998); *Melson v. Prime Ins. Syndicate, Inc.*, 429 F. 3d 633, 636 (6th Cir. 2005). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire*

& *Cas. Co.*, 223 F.3d 323, 328 (6th Cir. 2000); *Puckett,* 889 F.2d at 1485. *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

Enforcement of settlement agreements is strongly favored in Ohio law. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St. 3d 501 (1996); *State ex rel Wright v. Weygandt,* 50 Ohio St. 2d 194 (1977). Under Ohio law, a settlement agreement is a contract, enforceable if the court finds "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1 ¶ 16 (2002), quoting *Perlmuter Printing Co. v. Strome, Inc*., 436 F.Supp. 409, 414. (N.D.Ohio 1976). While it is preferable that a settlement be reduced to writing, that is not required for enforcement, provided there is sufficient particularity. *Spercel v. Sterling Industries, Inc.,* 31 Ohio St. 2d (1972).

As Johnson Electric notes, parties may make an enforceable contract which obligates them to execute a subsequent final written document (Proposed R&R, Doc. No. 52, PageID 741, citing *Union Savings Bank v. White Family Cos.,* 183 Ohio App. 3d 174 (2nd Dist. 2009). And a person can authorize her attorney to accept a settlement on the person's behalf, but the authorization must be explicit. *Moor v.Crouch*, 19 Ohio St. 2d 24 (1969).

Here, however, Ms. Page authorized Mr. Brown to accept on her behalf an offer to settle the case, but with reservation of authority in herself not to finally agree until she had seen and approved the final settlement documents. If she had told Mr. Brown that she has reviewed the documents and agreed to them, but then later refused to sign, we would have a case like *Union Savings Bank, supra*., and the Court could appropriately order her to sign. In other words, at

that point the condition on her acceptance set out in her handwritten note of October 26, 2012[2], would have been satisfied and she could have been ordered to sign. In other words, at that point her signature would have been a matter of performance, rather than acceptance.

The Magistrate Judge understands Mr. Brown's frustration. The Court has no doubt that he negotiated in good faith with Johnson Electric. Ms. Page effectively admits in the course of her testimony that she vacillated as to whether she would accept any settlement at all, as Mr. Brown testified. The parties did not present the merits of Ms. Page's claim in the enforcement hearing and it would have been irrelevant to do so, so the Magistrate Judge has no opinion on whether what Mr. Brown negotiated was a valuable settlement or not. The key point is that Ms. Page did not authorize Mr. Brown to accept on her behalf and ultimately, having seen the settlement documents, declined to accept.

The Magistrate Judge rejects Plaintiff's argument that any agreement could be set aside as a result of duress. Mr. Brown, so far as the record shows, carefully explained to Ms. Page the difficulties with her case and the vicissitudes of litigation. He reasonably believed that his good faith in negotiating with Johnson Electric would be questioned if or when Ms. Page rejected the $105,000 offer. It was appropriate for him at that point to advise Ms. Page that he could no longer represent her because of the position she had put him in and, given the scheduling order in this case, he had to withdraw promptly or run the risk that the case would not be prepared for trial. Although there was no testimony to this effect, it would have been quite reasonable for him to suppose that the Court would more likely grant additional time to new counsel than to someone who had been in the case from the beginning.

Accordingly, it is respectfully recommended that Johnson Electric's Motion to Enforce be DENIED.

---

[2] Johnson Electric Exhibit 6.

**Attorney Fees**

Plaintiff moves for attorney fees against both Mr. Brown and counsel for Johnson Electric under 28 U.S.C. § 1927 which provides

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although no conscious impropriety is required to authorize an award of attorney fees under this statute, such an award remains within the sound discretion of the trial judge. *Jones v. Continental Corp.*, 789 F.2d 1225, 1229-1230 (6th Cir. 1986). To satisfy the statute,

> There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher,* 123 F.R.D. 559, 561, (S.D. Ohio 1987), *quoting In Re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987). *See also Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996) and *Shepherd v. Wellman,* 313 F.3d 963 (6th Cir. 2002), quoting the same language.

The Magistrate Judge finds no sanctionable conduct on the part of either Mr. Brown or counsel for Johnson Electric. The determination of whether there was an enforceable settlement in this case required a day's worth of live testimony and close scrutiny of Ms. Page and Mr. Brown's testimony. Certainly most attorneys in Ms. Anderson's position could reasonably have believed they had a deal. Most attorneys in Mr. Brown's position could reasonably have

believed they were authorized to accept on Ms. Page's behalf.  Indeed, the Court does not know why Ms. Page refused ultimately to accept the settlement.  Certainly the question whether there was an enforceable settlement agreement was litigable in good faith and no attorney fees should be awarded.

January 17, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).