IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUSAN PAGE,

        Plaintiff,

     v.

UNIMERICA INSURANCE
COMPANY, et al.,

        Defendants.

:

:

:

:

Case No. 3:12-cv-103

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT UNIMERICA
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
(DOC. #78); SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT JOHNSON ELECTRIC NORTH AMERICA, INC.'S,
MOTION FOR SUMMARY JUDGMENT (DOC. #79); AND DISMISSING
ALL CLAIMS OF PLAINTIFF SUSAN PAGE'S COMPLAINT (DOC. #2)
WITH PREJUDICE, WITH THE EXCEPTION OF COUNT TWO, THE
BREACH OF FIDUCIARY DUTY CLAIM AGAINST DEFENDANT
JOHNSON ELECTRIC NORTH AMERICA, INC.; CONFERENCE CALL
SET WITH COUNSEL FOR PLAINTIFF AND FOR JOHNSON ELECTRIC
ONLY

---

In this case arising under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Plaintiff Susan Page ("Plaintiff" or

"Mrs. Page") brings claims of breach of fiduciary duty, equitable estoppel, and

promissory estoppel against Defendants Johnson Electric North America, Inc.

("Johnson Electric"), and Unimerica Insurance Company ("Unimerica"), arising out

of Unimerica's denial of a claim for her deceased husband's life insurance benefits. This Court has jurisdiction over ERISA claims pursuant to 29 U.S.C. § 1132(e)(1).

Pending before the Court are Unimerica's Motion for Summary Judgment (Doc. #78) and Johnson Electric's Motion for Summary Judgment (Doc. #79).  For the reasons set forth below, Unimerica's motion is SUSTAINED in its entirety, and Johnson Electric's Motion is SUSTAINED in part, but is OVERRULED with respect to Count Two of the Complaint (Doc. #2), Mrs. Page's breach of fiduciary duty claim.

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Mrs. Page is the widow of Roy William Page ("Mr. Page"), who was the Vice President of Finance at Johnson Electric from October 1, 1996, until June 20, 2010.  Johnson Electric Answer ¶¶ 5 & 8 (Doc. #10 at 3-4).  At the time material to Mrs. Page's claims, her husband received a salary of $130,690.52. *Id.* ¶ 17 (Doc. #10 at 6).  Unimerica issued a group life, accidental death and dismemberment, and long term disability insurance policy ("Plan") to Johnson Electric on January 1, 2008.  Mr. Page had life insurance coverage under the Plan, and Mrs. Page was the designated beneficiary of his policy. *Id.* ¶¶ 3 & 5 (Doc. #10 at 2-3); Unimerica Answer ¶¶ 3 & 5 (Doc. #8 at 2).

Johnson Electric was the Plan Sponsor and Plan Administrator, but the Plan was "administered on behalf of the Plan Administrator" by Unimerica.  Bailey Decl. Ex. 1 at Ex. D (Doc. #78-1 at 62).  As a "self-billed" group, Johnson Electric "was

2

responsible for maintaining all policy and enrollment records," as well as "calculating, reporting and submitting premium payments to Unimerica."  Bailey Decl. ¶ 10 (Doc. #78-1 at 3).  Unimerica did not maintain specific information about employees of a self-billed group until they filed a disability or life insurance claim.  *Id.* ¶ 11.  Once filed, Unimerica investigated the claim to determine the available coverage based on the terms of the policy.  *Id.* ¶ 12.  Unimerica did not know if a specific employee had been terminated or was on leave unless the employee or employer informed Unimerica, and it was the responsibility of a self-billed employer like Johnson electric to "provide a terminated employee with notice of their right to convert [his] life insurance coverage to an individual life insurance policy and provide terminated employees with conversion forms."  *Id.* ¶¶13-14.

The Plan defines a "Covered Person" as an "Employee insured under the Policy."  Bailey Decl. Ex. 1 at Ex. D (Doc. #78-1 at 27).  To be considered an "Employee," a person must meet the following three requirements: 1) be "directly employed in the normal business of" Johnson Electric; 2) be "paid for services" by Johnson Electric; and 3) be "Actively at Work for" Johnson Electric.  *Id.*  To be "Actively at Work," a Covered Person must "report[] for work at his usual place of employment or any other business location where he is required to travel and is able to perform the material and substantial duties of his regular occupation for the entire normal workday."  *Id.*

The Plan provides a life insurance benefit of 1 ½ times a Covered Person's annual salary, up to a maximum of $250,000.  Doc. #78-1 at 24.  Under the termination provision of the Plan, a Covered Person's insurance terminates on the date that he "ceases to be Actively at Work."  *Id.* at 31.  However, for a Covered Person on medical leave, life insurance benefits are extended for an additional three months.  *Id.*  The Plan allows a Covered Person to convert his life insurance to an individual policy.  To do so, he "must submit a written application and the first premium for the conversion policy" to Unimerica within 31 days of the termination date.  *Id.* at 35.

Mr. Page's health declined from diabetes and a related stroke that he suffered from in 2009.  Compl. ¶¶ 9-12 (Doc. #2 at 3); Page Dep. at 9 (Doc. #84 at 10).  By January, 2010, he had gone on dialysis, and his doctors wanted him to discontinue working.  Page Dep. at 85 (Doc. #84 at 86).  Unimerica approved Mr. Page's claim for short-term disability benefits based on his diabetes-related gangrene on March 13, 2010.  Unimerica Answer ¶ 9 (Doc. #8 at 2).

On May 19, 2010, at the instruction of his attorney, Mr. Page sent Johnson Electric an executed copy of a negotiated agreement terminating his employment with the company ("Separation Agreement").  Page Dep. Ex. 22 (Doc. #84-3 at 83).  According to the terms of the Separation Agreement, Mr. Page agreed to release and hold Johnson Electric harmless from any claim arising out of his employment with the company.  Doc. #84-3 at 85.  In return, Johnson Electric

4

agreed to pay Mr. Page a lump sum of $80,425, which represented 32 weeks of his salary; pay his family's COBRA premiums through February, 2012; and "support [Mr. Page's] claims for Short Term and/or Long Term Disability and other benefits provided under the terms of the plans provided by [Johnson Electric]." *Id.* at 84-85. The effective end date of his employment was April 30, 2010. *Id.* at 84.

In the cover letter with the Separation Agreement sent to Johnson Electric, Mr. Page stated the following:

> I would like the separation amount to be paid in one lump sum before the start of my long term disability payments (short term benefits end June 19, 2010).
>
> I understand that I will be eligible for life and accident insurance while I am on long term disability. If these costs are not covered by the company, please let me know how to make payments.

*Id.* at 83.

The Pages never received a response to the letter, and "assumed" that Johnson Electric would be paying for Mr. Page's life insurance policy. Page Dep. at 34 (Doc. #84 at 35). The Pages never made a premium payment on Mr. Page's life insurance policy after March, 2010. *Id.* at 22 (Doc. #84 at 23).

In a letter dated July 1, 2010, Unimerica stated that it had approved Mr. Page's long term disability benefits. Unimerica determined that Mr. Page's date of disability was March 13, 2010. Based on the terms of the policy, it determined that the starting date for long term disability benefits was June 11, 2010. Thomson Dec. Ex. D (Doc. #83-3 at 2).

5

In October or November, 2010, Johnson Electric sent Mr. Page a form that purportedly allowed him to enroll in life insurance benefits, as part of its "open enrollment" period. Page Dep. at 32 (Doc. #84 at 33). He filled out the form, elected a life insurance option, and named Mrs. Page as the beneficiary. Thompson Aff. Ex H (Doc. #83-7 at 2-4). Mr. Page returned the form to Johnson Electric. Page Dep. at 87 (Doc. #84 at 88). Plaintiff admits that Mr. Page was not an employee of Johnson Electric at that time. *Id.*

Mr. Page passed away on April 7, 2011. Page Dep. at 37 (Doc. #84 at 38). At the time of her husband's death, the Pages believed that the life insurance policy was in effect. *Id.* at 53 (Doc. #84 at 54). Mrs. Page was contacted by a representative from Johnson Electric who told her that there were life insurance benefits available and mailed the necessary paperwork to her for making a claim. *Id.* at 37-38 (Doc. #84 at 38-39).

On May 24, 2011, Mrs. Page received a letter informing her that the claim for life insurance benefits under the Unimerica policy had been denied because the policy had terminated with Mr. Page's employment at Johnson Electric. Thomson Decl. Ex. M (Doc. #83-10). After quoting the Plan's provisions concerning termination, the "Actively at Work" definition, and conversion, Unimerica stated:

> We have been informed by Mr. Page's employer [that] his date last actively at work was March 12, 2010 due to disability. In addition, he had accumulated vacation time of 22 days which extended his date last actively at work to April 12, 2010. The policy provides a 3 month continuation of coverage provision which extended his coverage to July 12, 2010. At that time he would have been eligible

6

to convert his coverage to a whole life policy with[in] 31 days, or [by] August 13, 2010.  We have been informed by our Conversion department [that] there is no record that Mr. Page converted his coverage. . . . Since Mr. Page did not have coverage with Unimerica Insurance Company at his time of passing, we must close the claim without payment.

*Id.* (Doc. #83-10 at 3).

The denial was appealed on July 19, 2011, leading to a second denial on November 22, 2011.  Thomson Decl. Ex. N (Doc. #83-11 at 2-3).  Unimerica's appeal decision affirmed the original denial with the same reasoning.  The decision stated that Johnson Electric, not Unimerica, had the "responsibility" to inform Mr. Page of his rights under the policy.  Unimerica also noted that "while out on disability, Mr. Page should not have been given the opportunity by his employer to re-elect Life Insurance coverage as by that time his coverage had terminated." *Id.*

Mrs. Page filed suit in this Court on December 7, 2011.  Compl. (Doc. #2). In her Complaint, she made the following allegations.  She "relied on Johnson Electric and Unimerica to provide accurate and complete information about benefits under the Plan." *Id.* ¶ 13 (Doc. #2 at 3).  In its telephonic and written contact with her and her husband, Unimerica never advised them that her husband "would lose his life insurance benefits unless he converted to an individual policy of insurance" or disclosed "the impending loss of life insurance benefits." *Id.* ¶¶ 39 & 42 (Doc. #2 at 6).  As written, the "Plan contains no practical information that would advise a plan participant or beneficiary how to elect conversion coverage under the Plan or obtain a form for that purpose." *Id.* ¶ 41 (Doc. #2 at 6).  Mr.

7

Page had filled out and submitted the enrollment form to Johnson Electric, and the form "advised that the applicant was automatically enrolled in life insurance coverage." *Id.* ¶ 46 (Doc. #2 at 7).

Count One of the Complaint alleged a breach of fiduciary duty by Unimerica, and Count Two alleged a breach of fiduciary duty by Johnson Electric, based on Defendants' alleged failure "to provide accurate and complete information about available plan benefits," and to inform the Pages of when his life insurance benefits would terminate. *Id.* ¶¶ 52-61(Doc. #2 at 7-8). Count Three stated a claim of equitable estoppel against Johnson Electric, alleging that by providing the enrollment form to Mr. Page, the company made a "material representation" that the life insurance was in effect, which the Pages relied upon to their detriment. *Id.* ¶¶ 62-70 (Doc. #2 at 8-9). Count Four, equitable estoppel against Unimerica, alleged that the insurer made a "material representation" that Mr. Page's life insurance benefits were in effect by stating that its premiums were waived during the period he was on short term disability, and the Pages relied on this representation to their detriment. *Id.* ¶¶ 71-79 (Doc. #2 at 9-10). Count Five, promissory estoppel against Johnson Electric, and Count Six, promissory estoppel against Unimerica, were based on the same allegations stated in the equitable estoppel claims. *Id.* ¶¶ 80-97 (Doc. #2 at 10-12).

On May 4, 2015, Unimerica and Johnson Electric filed Motions for Summary Judgment, arguing that they are entitled to judgment as a matter of law on all of

Mrs. Page's claims. Doc. #78 & Doc. #80. Mrs. Page filed a single Response in Opposition to both Defendants' motions on May 26, 2015. Doc. #85. Defendants filed Reply Briefs on June 9, 2015. Doc. #86 & Doc. #87.

## II.   STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT[1]

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has demonstrated that no disputed issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a genuine dispute of a material fact to submit to the finder of fact. *Celotex*, 477 U.S. at 324. The nonmovant must "cit[e] to particular parts of materials in the record" to

---

[1] The parties have stipulated that Mrs. Page "is not asserting an administrative claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B)," and, as a result, "there is no claim to be decided based on the administrative record[.]" Doc. #75. For this reason, the Court applies the typical summary judgment standard of review, and not the review confined to the administrative record that applies when a plaintiff seeks the recovery of benefits. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998) (holding that a "district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly" when adjudicating a claim for denial of benefits, to which "summary judgment procedures" do not apply).

demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). However, it is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material that demonstrates the existence of a genuine dispute. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Generalized assertions lacking the support of particularized citation required by Rule 56 do not suffice, as a court has no "obligation to 'wade through' the record for specific facts" in support of a party's arguments. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989)).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Conversely, material facts in genuine dispute that "may reasonably be resolved in favor of either party" require denial of summary judgment. *Anderson*, 477 U.S. at 250.

10

When ruling on a motion for summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court must avoid "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as such responsibilities are reserved for the finder of fact and are inappropriate to employ at the summary judgment stage. *Anderson*, 477 U.S. at 255.

## III.  ANALYSIS

As a preliminary matter, the Court notes that although Mrs. Page's Complaint states claims against both Unimerica and Johnson Electric for breach of fiduciary duty, equitable estoppel, and promissory estoppel, her Response to Defendants' Motions for Summary Judgment does not address or in any way respond to Defendants' challenges to her claims of promissory estoppel. The Court considers this silence a tacit acknowledgement that she has abandoned these claims. *E.g., Rugiero v. Nationstar Mortg.*, 580 F. App'x 376, 378 (6th Cir. 2014) (affirming summary judgment where plaintiff's response failed to address defendant's arguments, stating that that plaintiff's "silence was sufficient justification for granting [defendant's] motion for summary judgment"). Accordingly, Defendants' motions are sustained with respect to Mrs. Page's promissory estoppel claims, Count Five and Count Six of the Complaint, and said claims are dismissed with prejudice.

11

Furthermore, while Mrs. Page's Response does defend her equitable estoppel claim against Johnson Electric, she is silent regarding her equitable estoppel claim against Unimerica. Accordingly, Unimerica's Motion for Summary Judgment is sustained with regards to the equitable estoppel claim pled against it, Count Four of the Complaint.

This leaves Mrs. Pages claims of breach of fiduciary duty against both Defendants, and her equitable estoppel claim against Johnson Electric, to which the Court now turns.

## A.    Breach of Fiduciary Duty Claims (Count One and Count Two)

Unimerica argues that because Mrs. Page's theory of breach of fiduciary duty is based on allegations that it failed to provide the Pages with accurate information about the life insurance policy, the undisputed evidence shows that no breach occurred because 1) the Pages had a copy of the Plan and its terms; 2) any obligation to provide the Pages with notice of Plan terms rested with Johnson Electric, the "self-billed" policy holder, not Unimerica; and 3) even if it were assumed that Unimerica had an obligation to provide the Pages with notice of the conversion option, it could not have provided it because it had no knowledge of the termination of Mr. Page's employment until after his death. Doc. #78 at 8-9. Unimerica also argues that Mrs. Page's claim fails as a matter of law because she seeks only "individualized relief," and a breach of fiduciary duty claim only exists for relief on behalf of the Plan. *Id.* at 9-10.

Johnson Electric argues that it is entitled to summary judgment on Mrs. Page's breach of fiduciary duty claim for two reasons. Doc. #80 at 6. First, there is no evidence that it failed to provide accurate and complete information about the Plan terms or benefits. Second, as a matter of law, there is no cause of action for recovery of individual benefits based on a breach of fiduciary duty. *Id.*

Mrs. Page responds as follows. First, Defendants' arguments that her breach of fiduciary duty claim fails for seeking individualized relief only apply to claims brought under 29 U.S.C. § 1132(a)(2). Doc. #85 at 4. Mrs. Page pled her claim under Section 1132(a)(3), which allows recovery of benefits according to plan terms as they were misrepresented by a fiduciary to a beneficiary. *Id.* Second, Johnson Electric's failure to respond to her husband's May 19, 2010, request to apprise him of the status of his life insurance benefits, as well as the enrollment form sent to him in October or November, 2010, amounted to representations that his life insurance policy was in effect until his death. *Id.* at 5. Her claim is an effort "to force Johnson Electric, and Unimerica as the administrator of the alleged policy, to abide by these misrepresentations." *Id.* at 6.

Unimerica replies that Mrs. Page's breach of fiduciary duty claim points only to alleged misrepresentation by Johnson Electric, but no action or omission on the part of Unimerica to support her claim. Doc. #86 at 3-5. Johnson Electric replies by asserting that it "was not a fiduciary with respect to the allegations at issue" because it had no power to "promise benefits under the plan or to change the

13

terms of the plan." Doc. #87 at 3. It denies that it can be held liable for Mr. Page's life insurance benefit merely from the act of sending him enrollment forms. *Id.* at 4.

Under ERISA, a claim for breach of fiduciary duty may be brought under either 29 U.S.C. § 1132(a)(2) or § 1132(a)(3). Under Section 1132(a)(2), an action may be brought against a fiduciary who is "personally liable" for "any losses to the plan resulting from" its breach of fiduciary duty. This type of action "bars [a] Plaintiff's recovery for individual relief in the form of payment for the individual insurance policy and requires [the] Plaintiff to allege injury with respect to the actual plan." *Walker v. Fed. Exp. Corp.*, 492 F. App'x 559, 562 (6th Cir. 2012). On the other hand, under Section 1132(a)(3), "a participant, beneficiary, or fiduciary" may bring an action: "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan[.]" A claim under Section 1132(a)(3) may be made against a fiduciary who misrepresents the terms of the plan by a plaintiff who seeks recovery under the misrepresented terms, rather than the plan's actual terms.[2] *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d. 833

---

[2] A plaintiff seeking recovery of benefits under the terms of the plan may not sue under 29 U.S.C. § 1132(a)(3), but must instead bring an action under Section 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See Gore*, 477 F.3d at 842.

(6th Cir. 2007). A comparison of Mrs. Page's allegations with the two causes of action for breach of fiduciary duty available under ERISA demonstrates that Defendants have misunderstood the section under which her claim arises. She concedes that the policy had lapsed and that her husband had not converted the group policy to an individual policy before she filed the claim for benefits. Thus, she does not seek a remedy under the terms of the plan or a remedy for losses to the Plan, as is required to state a claim under Section 1132(a)(2). As she expressly asserts in the Complaint, Mrs. Page seeks relief under Section 1132(a)(3), alleging that certain representations led the Pages to believe that her husband's life insurance policy was in effect when it was not, and those representations amounted to a breach of fiduciary duty.

"To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). The Court will consider each element in turn.

15

**1.** **Were Defendants acting as fiduciaries when making the challenged representations?**

"The threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Under ERISA, a person qualifies a fiduciary if "(i) he exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."[3] 29 U.S.C. § 1002(21)(A). Congress intended for courts to "broadly" interpret the term fiduciary. *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988).

The Sixth Circuit "employs a functional test to determine fiduciary status" under ERISA. *Briscoe v. Fine*, 444 F.3d 478 (6th Cir. 2006); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (explaining that ERISA "defines 'fiduciary' . . . in *functional* terms of control and authority over the plan"). Thus, if a person's function is to perform only non-discretionary or "purely ministerial"

---

[3] Under the portion of this definition that is not relevant to Mrs. Page's claim, a person may qualify as an ERISA fiduciary if "(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so[.]" 29 U.S.C. § 1002(21)(A).

actions to manage or administrate a plan, such a person does not qualify as an ERISA fiduciary. 29 C.F.R. § 2509.75-8 (stating that "a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary"). In the Department of Labor's interpretative guidance, such "purely ministerial functions" include "[p]reparation of employee communication material," maintaining "participants' service and employment records," and "advising participants of their rights and options under the plan." *Id.*

In *Van Loo v. Cajun Operating Co.*, --- F. Supp. 3d ---, 2014 WL 6750453 at *8 (N.D. Ohio Dec. 1, 2014), the U.S. District Court for the Northern District of Ohio rejected an employer's assertion that it did not qualify as an ERISA fiduciary after accepting a plan participant's enrollment forms for life insurance benefits, informing her that she had completed the enrollment, accepting her premiums, and informing her in writing that she had to pay a supplemental premium to retain her life insurance. In reality, the supplemental premium would only have allowed the plan participant to keep her policy active if she also submitted a "proof of good health form," but the employer failed to provide it to her. *Id.* After her death and the insurer's rejection of a benefits claim, her beneficiaries brought a claim of breach of fiduciary duty based on misrepresentation. *Id.* at *4. The court found that the plaintiffs plausibly alleged that the employer was a fiduciary because the plan named the employer as the plan administrator, it had a self-administered

billing arrangement with the insurer that made it responsible for processing coverage elections in accordance with the plan, and all the acts alleged fell within its capacity as the plan administrator.  *Id.* at 8.

Similar to *Van Loo*, it is undisputed in this case that the Plan names Johnson Electric as Plan Administrator, the company is a "self-billed" policyholder with Unimerica that is "responsible for maintaining all policy and employment records," and the company had the responsibility to provide terminated employees such as Mr. Page with notice of their conversion rights under the policy.  Sending the Pages the enrollment form in late 2010 fell within its responsibilities as a Plan Administrator.  The Court concludes that, as in *Van Loo*, Johnson Electric was a fiduciary with regards to the functions it performed as the employer-administrator of the Plan for purposes of Mrs. Page's claim.

Attempting to minimize the discretionary authority and responsibility it held as a Plan Administrator, Johnson Electric asserts that it did not have the power to "promise benefits under the [Plan] or to change [its] terms," and that it merely sent Mr. Page an enrollment form.  Doc. #87 at 3.  However, under ERISA, "one is characterized as a fiduciary to the extent he exercises any discretionary authority or control, and not that a fiduciary exercises *complete* discretionary authority or control."  *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 529 (6th Cir. 2012).  Furthermore, the court in *Van Loo* rejected the employer's assertion that it was not a fiduciary because it had only performed "'ministerial' non-fiduciary functions,"

18

such as sending an enrollment form. *Id*. While acknowledging that the employer's acts, "taken in isolation, could be viewed as ministerial acts falling within 29 C.F.R. § 2509.75-8," *Van Loo* cautioned against an "overly narrow reading" of the plaintiffs' claim, observing that "it is possible for an administrator to engage in some ministerial functions but still act as a fiduciary if those functions fall within the administrator's discretionary authority to manage the plan." *Id.* For the same reason, the Court rejects Johnson Electric's argument that it was not a fiduciary.[4]

The Court now turns to the question of Unimerica's fiduciary status, for the purposes of Mrs. Page's breach of fiduciary duty claim. At first blush, Unimerica's status as a fiduciary may seem obvious. It is the insurer, and it admits that it "determines whether coverage is available based on the terms of the applicable policy." Bailey Decl. ¶ 13 (Doc. #78-1). Unimerica also admits that it "administered the terms of the Plan in accordance with the terms of the Policy." Doc. #86 at 3 n.2. However, as explained previously, the first element of a breach of fiduciary duty claim asks whether "the defendant was acting in a fiduciary capacity *when it made the challenged representations*," not whether it had a general fiduciary duty with respect to some aspect of the plan's administration or the distribution of its assets. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439,

---

[4] The Court also notes that Johnson Electric did not argue that it was not an ERISA fiduciary in its Memorandum in Support of its Motion for Summary Judgment when arguing that it was entitled to summary judgment on Mrs. Page's breach of fiduciary duty claim. It only denied being a fiduciary in its Reply Brief, after Mrs. Page addressed that element of the claim in her Response.

449 (6th Cir. 2002) (emphasis added). As noted, the analysis is "functional."
*Mertens*, 508 U.S. at 262. Thus, the question is whether the party allegedly
functioned as a fiduciary in the context of the plaintiff's allegations of breach.

Here, the Complaint alleges that Unimerica failed to inform the Pages that
Mr. Page "would lose his life insurance benefits unless he converted to an
individual policy," and that the insurer failed to send them "a form or
instructions . . . that would enable [him] to apply for conversion of life insurance
benefits." Compl. ¶¶ 39-40 (Doc. #2 at 6). However, the undisputed evidence
shows that Johnson Electric, not Unimerica, had the "responsibility to provide a
terminated employee with notice of their right to convert their life insurance
coverage to an individual policy and provide terminated employees with the
conversion forms." Bailey Aff. ¶ 14 (Doc. #78-1). Furthermore, even if Unimerica
had that responsibility, it is undisputed that it had no knowledge that Mr. Page's
employment had been terminated until it investigated Mrs. Page's claim for
benefits after his death. These facts do not demonstrate that Unimerica had a
fiduciary responsibility with respect to the allegations that form a basis for her
breach of fiduciary duty claim.

In her Response to Unimerica's Motion for Summary Judgment, Mrs. Page
asserts that Unimerica is a fiduciary under 29 U.S.C. § 1001(21)(A), because the
denial of her claim for Mr. Page's life insurance benefits "demonstrated its
authority over disposition of plan assets." Doc. #85. While that may be true, as

20

Unimerica does not dispute that it had authority over the disposition of the Plan's assets, her breach of fiduciary duty claim does not allege that Unimerica committed a breach of its fiduciary duty in the use of the Plan's assets. Rather, her claim was prompted by certain alleged misrepresentations on the part of Johnson Electric. As the insurer points out, it was Johnson Electric that performed the acts or omissions that give rise to Mrs. Page's claim, such as the failure to respond to Mr. Page's letter and the sending of the enrollment form in November, 2010, that led them to believe that the policy was in effect.

Unimerica did not make the "challenged representations" upon which Mrs. Page's breach of fiduciary duty claim is based, so it could not have been "acting in a fiduciary capacity" when the representations were made. *James*, 305 F.3d at 449. For this reason, Unimerica is entitled to summary judgment on Mrs. Page's breach of fiduciary duty claim against it.

### 2. *Were the misrepresentations material?*

Under the second prong of an ERISA breach of fiduciary duty claim, the plaintiff must show that the challenged representations "constituted material misrepresentations[.]" *James*, 305 F.3d at 449. Under Sixth Circuit precedent, the following principles guide the inquiry of whether a misrepresentation is material for purposes of a breach of fiduciary duty claim brought under ERISA. "A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were

21

made negligently or intentionally.'" *James*, 305 F.3d at 449 (quoting *Krohn*, 173 F.3d at 547). The alleged misrepresentation may concern "communications to plan participants regarding plan administration," such as "eligibility under a plan" or "the extent of benefits under a plan." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir. 2006) (quoting *Drennan*, 977 F.2d at 251)). Furthermore, "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing [] benefits to which she may be entitled." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). There is a requirement that a fiduciary "give complete and accurate information in response to participants' questions[.]" *Id.* (quoting *Drennan v. Gen Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)).

With these principles in mind, it is clear that a reasonable fact-finder could conclude that the representations and omissions that Mrs. Page points to constituted material misrepresentations by Johnson Electric. First, the representations and omissions in question, such as Johnson Electric's failure to respond to Mr. Page's letter and the sending of the enrollment form concerned her husband's "eligibility under a plan" and "the extent of benefits" he was entitled to as his employment terminated. *Moore*, 458 F.3d at 432. It would also be reasonable to conclude that Johnson Electric's failure to respond to Mr. Page's inquiry misled him into thinking that his life insurance premium would continue to be paid by the company, which prevented him from making an adequately

22

informed decision about whether to pursue the conversion option under the Plan. *Krohn*, 173 F.3d at 547. In response to his inquiries, Johnson Electric gave no reply. Mrs. Page testified that "we trusted them to respond to us if there was a need for us to pay." Page Dep. at 35 (Doc. #84 at 36). A finder of fact could reasonably conclude that Johnson Electric's omission constituted a breach of a fiduciary's "affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn*, 173 F.3d at 548 (quoting *Bixler v. Cent. Pa Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993)). For these reasons, the Court concludes that Johnson Electric has not demonstrated that Mrs. Page's breach of fiduciary duty claim fails to demonstrate that a material misrepresentation occurred.

### 3. *Did Plaintiff rely on those misrepresentations to her detriment?*

Johnson Electric points to no evidence that demonstrates that the Pages did not rely on its failure to respond to Mr. Page's inquiries or the enrollment form to their detriment. It is undisputed that the Pages never converted the life insurance policy within the timeframe required by the terms of the Plan to preserve eligibility for its benefits, and this failure led to the denial of the claim for life insurance benefits. According to Mrs. Page, her "husband died believing that he was taking care of his family through that life insurance, and Johnson Electric gave us no reason to believe that it was not [in effect]." Page Dep. at 53 (Doc. #84 at 54). Considering this statement, it would be reasonable to conclude that the eventual

23

denial of her claim occurred because of the Pages' reliance on Johnson Electric's acts and omissions. For this reason, the company has not demonstrated that Mrs. Page's breach of fiduciary duty claim fails on the third element.

Johnson Electric asserts that the Pages were "advised through explicit language" in the Plan of the conversion requirement, which had to occur within 31 days of the policy's termination. Doc. #80 at 6. This argument does not confront the substance of Mrs. Page's claim, which is not based on the actual terms of the Plan. Rather, Mrs. Page alleges that representations by Johnson Electric led Mr. Page to believe that the life insurance policy continued to be in effect after his employment terminated. The status of Mr. Page's employment after he entered into the severance agreement is unclear. On the one hand, the agreement purports to expressly terminate his employment. On the other hand, later actions by Mr. Page and Johnson Electric treat him as an "employee" entitled to benefits. Johnson Electric sent him an enrollment form during the open enrollment period for employees. Mr. Page filled out the form and identified his job title and salary on the form. Furthermore, Mr. Page did not receive a COBRA form when his employment terminated. Rather, as Unimerica points out, he "continued to be covered by the Johnson Electric medical plan just like any other employee even though he was not an employee." Doc. #78 at 5. In short, there are a number of disputed issues of material fact that prevent the Court from entering summary

24

judgment in favor of Johnson Electric on Mrs. Page's breach of fiduciary duty claim.

For the reasons set forth above, Unimerica's Motion for Summary Judgment (Doc. #78) is sustained with respect to Count One, the breach of fiduciary duty claim, but Johnson Electric's Motion for Summary Judgment (Doc. #79) is overruled with respect to Count Two, the claim for breach of fiduciary duty.

## B.     Equitable Estoppel Claim against Johnson Electric (Count Three)

Mrs. Page's equitable estoppel claim arises from the same facts that give rise to her breach of fiduciary duty claim. In Count Three of the Complaint, the claim alleges that Johnson Electric made a material misrepresentation that Mr. Page's life insurance policy was in effect by providing him with an enrollment form, and it was aware that the coverage would lapse if the Pages did not convert the policy into an individual policy. Compl. ¶¶ 63-64 (Doc. #2 at 9). Furthermore, Mrs. Page alleges that she and her husband had a right to rely on the company's representations, they were unaware that his life insurance would terminate, and she has suffered harm as a result. *Id.* ¶¶ 65-70 (Doc. #2 at 9).

Johnson Electric argues that it is entitled to summary judgment on this claim because, as alleged, it does not meet the requirements set forth by the Sixth Circuit in *Bloemker v. Laborer's Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2013) for an equitable estoppel claim under ERISA. Doc. #80 at 7.

25

In her Response, Mrs. Page argues that she can prove both the traditional elements of estoppel and the additional elements required under *Bloemker* for an ERISA estoppel claim. She points to the enrollment form that Johnson Electric sent the Pages in November, 2010, as evidence to support the "written representation" requirement. Doc. #85 at 7-11.

In its Reply, Johnson Electric argues that the enrollment form cannot be considered the written representation of an estoppel claim because it was sent to Mr. Page after deadline for conversion ended. Thus, he could not have relied on it to his detriment, and Mrs. Page's estoppel claim fails to prove this crucial element. Doc. #87 at 4.

Before *Bloemker*, the Sixth Circuit had held that estoppel "cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. Gen Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998); *see also Marks v. Newcourt Credit Grp.*, 342 F.3d 444, 456 (6th Cir. 2003). Sprague identified two reasons for this rule:

> First . . . estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Id.*

However, the Sixth Circuit later recognized that a plaintiff may bring a claim to estop the enforcement of unambiguous plan provisions if the *Sprague* concerns

26

do not apply or "outweigh the extraordinary circumstances" of a particular case. *Bloemker*, 605 F.3d at 443. In *Bloemker*, the plaintiff opted for early retirement after receiving written estimates and a "certification" of the amount of his monthly pension benefit from the plan administrator. *Id.* at 439. After the plaintiff retired and received twenty months of pension payments, the plan administrator informed him that a computer error had resulted in an incorrect calculation of the benefit amount and he would have to repay over $11,000. *Id.* The Sixth Circuit held that the plaintiff stated a viable estoppel claim because *Sprague*'s policy concerns did not apply. *Id.* at 443-34. First, it was reasonable for the plaintiff to rely on the certification of his pension benefits, even if the certification was inconsistent with the unambiguous terms of the plan, because "it would have been impossible for him to determine his correct pension benefit given the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions." *Id.* at 443. Second, "under appropriate circumstances," such as those presented by the plaintiff's case, it was appropriate to allow "enforcement of something other than the plan documents[.]" *Id.* at 444. Thus, *Bloemker* held that:

> a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id.* The traditional elements of estoppel include:

27

1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Id.*

Here, the only piece of writing that Mrs. Page points to as fulfilling *Bloemker*'s requirement of a "written representation" is the enrollment form that Johnson Electric sent in October or November of 2010. However, the Pages could not have relied on this enrollment form to their detriment because it was sent long after the August 13, 2010, deadline for converting Mr. Page's life insurance policy to an individual policy. Mrs. Page's claim was denied because they did not convert the policy before that date, and such conversion was the only way that Mr. Page could have continued to maintain a valid life insurance policy under the terms of the Plan. When he received the enrollment form, this may have provided additional support for believing that the policy was still in effect, but it was not detrimental beyond their previous reliance on Johnson Electric's silence in response to Mr. Page's May 19, 2010, inquiry regarding his life insurance policy. Reliance on that silence was what was materially detrimental to them because it occurred during the time period that would have allowed them to convert the policy. Mr. Page may have justifiably relied on Johnson Electric's silence in response to his inquiry

28

regarding his life insurance policy, but that was not reliance on a "written representation," so it cannot form the basis for an estoppel claim under *Bloemker.*

Furthermore, the estoppel claim fails because there is no evidence to support the second element of traditional estoppel, which requires the plaintiff to show the defendant's "awareness of the true facts by the party to be estopped[.]" *Bloemker*, 605 F.3d at 442. This requires proof of "an element of fraud" in the defendant's actions, or "intended deception or such gross negligence as to amount to constructive fraud." *Id.* (quoting *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007)). Mrs. Page points only to Johnson Electric's "claim that the enrollment form was sent to Mr. Page by an intern, by mistake" to support the second element of her estoppel claim. Doc. 385 at 8. Mistakenly sending an enrollment form to a former plan participant does not demonstrate anything about Johnson Electric's intent. Furthermore, Mrs. Page has not explained how this act amounted to gross negligence or constructive fraud.

Apart from an inability to demonstrate these elements, there is a foundational problem with Mrs. Page's estoppel claim. An equitable estoppel claim "precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel." *Bloemker*, 605 F.3d at 443-44 (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299 (6th Cir. 1991), *abrogated on other grounds* by *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015)). As stated in the Complaint, her equitable estoppel claim

29

alleges that "Johnson Electric is estopped to deny that Plaintiff is entitled to receive the benefit arising under [Mr. Page's] life insurance coverage." Compl. ¶ 70 (Doc. #2). Thus, Mrs. Page's claim seeks to estop Johnson Electric from asserting a contractual right to deny her the benefits of her husband's life insurance policy. However, Johnson Electric never had the contractual right to deny her life insurance benefits under the Plan. That right belonged to the insurer, Unimerica, which determined that Mr. Page was not a Covered Person at the time of his death. Under the terms of the plan, Unimerica agreed to "pay the Covered Person's beneficiary the amount of insurance in force on the date of death when [it] receive[s] satisfactory proof of a Covered Person's death." Bailey Decl. Ex. D to Ex. 1 at 11 (Doc. #78-1 at 34). Johnson Electric cannot be estopped from asserting the right to deny benefits under this provision because it only obligated Unimerica to pay them. *See Cataldo v. United States Steel Corp.*, 676 F.3d 542 (6th Cir. 2012) (holding that an ERISA claim of equitable estoppel was only properly brought against the pension fund administering the plan, not against plaintiffs' employer or union, because "only [it] can potentially be estopped from doing anything, because it is the only defendant that pays pension benefits in accordance with plan documents"); *Stark v. Mars, Inc.*, 879 F. Supp. 2d 752, 762 (S.D. Ohio 2012) (citing *Cataldo* and noting that employer was entitled to summary judgment on plaintiff's estoppel claim on the ground that "[b]ecause the Committee, not Mars, is charged with paying benefits in accordance with the

30

documents governing the [plan], the Committee is the only proper defendant to the estoppel claims"). In conclusion, there is no evidence to support the aforementioned elements of Mrs. Page's equitable estoppel claim against Johnson Electric, and the company cannot be estopped from denying her claim because the Plan did not give it the right to deny it or obligate it to pay the life insurance benefit she seeks. Accordingly, Johnson Electric is entitled to summary judgment on the equitable estoppel claim, Count Three of the Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Unimerica's Motion for Summary Judgment (Doc. #78) is SUSTAINED. Johnson Electric's Motion for Summary Judgment (Doc. #79) is SUSTAINED in part and OVERRULED in part. Said motion is overruled with respect to Count Two of the Complaint (Doc. #2), Mrs. Page's breach of fiduciary duty claim against Johnson Electric. All other claims stated therein are dismissed with prejudice.

Counsel of Record for Plaintiff and for Johnson Electric will take note that a telephone conference call will be convened by the Court, beginning at 9 a.m. on Monday, August 3, 2015, for the purpose of setting a new trial date and other dates leading to the resolution of this litigation.

Date: July 27, 2015

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE